# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KERRY T. SPAULDING, | Case No. 1:18-cv-886 |
| | Black, J. |
| Plaintiff, | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Kerry Spaulding filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error. For the reasons explained below, I conclude that the ALJ's non-disability determination should be AFFIRMED.

**I. Summary of Administrative Record**

In September 2015 and in January 2016, respectively, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging a disability onset date of June 1, 2010. Plaintiff's claim was denied initially and upon reconsideration, following which Plaintiff requested an evidentiary hearing before an administrative law judge ("ALJ").

On January 31, 2018, through counsel, Plaintiff appeared and gave testimony before ALJ William Diggs; a vocational expert also testified. (Tr. 27-47). On March 30, 2018, the ALJ issued an adverse written decision. (Tr. 12-21). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final determination. Plaintiff filed this appeal to obtain additional judicial review.

1

Plaintiff testified that he can no longer work due to his back and hip pain, auditory and visual hallucinations, and depression and anxiety. Plaintiff was classified as a "younger individual" at 41 years old at the time of his alleged disability onset, and remained in the same age category on the date he was last insured for purposes of DIB.[1] He has a high school education and past relevant work as a delivery truck driver, which was primarily unskilled and performed at the medium level.

The ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease, obesity, osteoarthritis, affective disorder, and anxiety disorder." (Tr. 14). However, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 15).

After considering the record, the ALJ determined that Plaintiff remained capable of light work, subject to the following additional limitations:

> [He] can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can frequently[] stoop, kneel, crouch, and crawl. He is able to understand, remember, and apply 1-4 step tasks. He can have no fast pace or strict production demands. He can tolerate occasional changes in work setting, where changes are explained in advance.

(Tr. 16). Based on the RFC as determined and the testimony of the vocational expert, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, including the representative jobs of routing clerk, marking clerk, and inspector. (Tr. 21). Therefore, the ALJ concluded that Plaintiff was not under a disability. (*Id.*)

---

[1] Plaintiff was insured only through June 30, 2018, his "date last insured" or "DLI." (Tr. 12). For purposes of DIB (but not SSI), he must prove that he became disabled before that date.

In this appeal, Plaintiff focuses exclusively on his mental impairments, arguing that the ALJ erred when he determined that those impairments were not disabling. Specifically, Plaintiff asserts that the ALJ erred: (1) by failing to give controlling weight to the opinions of Plaintiff's treating psychiatrist and (2) by failing to account for the variability of Plaintiff's symptoms when concluding that he can work on a "sustained" basis. Because substantial evidence exists in the record as a whole to support the ALJ's analysis and decision, I find no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims

### 1. Medical Opinion Evidence Relating to Plaintiff's Mental Limitations

There is no dispute that Plaintiff suffers from serious mental impairments. Plaintiff was diagnosed with depression and anxiety including a panic disorder, and began counseling sessions in October 2013 at Talbert House. Around the same time, he began treating with a psychiatrist at Talbert House, Dr. Pelnick. Despite the existence of these "serious" impairments, Plaintiff does not dispute the ALJ's conclusion that he did not meet or medically equal any specific mental impairment Listing. Instead, Plaintiff argues that the ALJ erred in failing to find his limitations to be work-preclusive based upon Dr. Pelnick's RFC opinions.

On March 16, 2016, Dr. Pelnick completed a mental RFC form in which he opined that Plaintiff is unable to work due to his psychiatric impairments, which would cause Plaintiff to miss more than four days of work per month. (Tr. 628-632). On the check-box portion of the form, Dr. Pelnick opined that Plaintiff's ability to remember locations and work-like procedures is severely impaired. In addition, Dr. Pelnick assessed Plaintiff's level of impairment in understanding and remembering or caring out very short and simple instructions as "moderately severe." (Tr. 629). Dr. Pelnick assessed Plaintiff's degree of social limitations as ranging from moderate to moderately severe. Considering the three primary functional domains (commonly known as "Paragraph B" criteria), he assessed Plaintiff with "severe" limitations in his activities of daily living, and with "moderately severe" limitations in maintaining social functioning and in the domain of concentration, persistence or pace.[2] (Tr. 630).

---

[2]The terminology on the RFC assessment form completed by Dr. Pelnick is ambiguous in part because the referenced form does not correspond precisely with the regulatory scheme. Under social security

In addition to Dr. Pelnick's opinions, the ALJ considered two additional RFC opinions offered by non-examining agency psychologists who reviewed Plaintiff's records. In contrast to Dr. Pelnick, the two agency consulting psychologists opined that Plaintiff had no more than moderate impairments in all functional areas, which were not work-preclusive. In December 2015, Dr. Matyi opined that Plaintiff had moderate work-related limitations in several areas, including in concentration, persistence and pace. Contrary to Dr. Pelnick, Dr. Matyi found that Plaintiff remained capable of carrying out simple and occasionally complex tasks, could maintain attention, make simple decisions, and adequately adhere to a schedule, despite needing some flexibility with time limits and production standards. (Tr. 88-89). Dr. Matyi found no limitations in Plaintiff's social interactions. (Tr. 89). In April 2016, Dr. Malloy concurred with Dr. Matyi's assessment.

The ALJ considered all three opinions but gave each only "some weight." Plaintiff complains that the ALJ erred by failing to give Dr. Pelnick's opinions "controlling weight, or at the very least substantial weight." (Doc. 8 at 7). The ALJ explained his reasoning as follows:

> This opinion was only given some weight, and not controlling weight, because it was inconsistent with some other evidence, including the claimant['s] reported symptom improvement on numerous occasions… and having a normal mood and affect…. Also, it did not provide any specific functional limitations, and the issue as to whether a claimant can work is left to the Commissioner.

(Tr. 19).

The regulation concerning the opinions of treating physicians, 20 C.F.R. § 404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of

---

standards, an individual's mental limitations in the Paragraph B functional areas are generally described as "mild," "moderate," "marked," or "extreme."

6

the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). For claims filed before March 27, 2017, the treating physician rule[3] requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009).

> The reasoning behind the rule has been stated as follows:
>
> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir.2004) (quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such

---

[3]Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. § 404.1520c entirely replaces the treating physician rule. However, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Based on the date that Plaintiff filed his claim in this case, the "treating physician rule" and related SSRs and case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

7

as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley* 581 F.3d at 406; *see also* 20 C.F.R. § 404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

Plaintiff argues that in this case, the ALJ's stated reasons for giving Dr. Pelnick's opinions only "some weight" do not satisfy the "good reasons" standard. I disagree. First, there is no question that the ALJ appropriately discounted Dr. Pelnick's opinion that Plaintiff was unable to perform any work, since that determination is not a medical opinion entitled to any particular weight but is instead reserved to the Commissioner. *See Turner v. Com'r of Soc. Sec.*, 381 Fed. Appx. 488, 492 (6th Cir. 2010); *see also* 20 C.F.R. § 416.927(d)(1). Second, the ALJ was correct to point out that Dr. Pelnick was short on "specific functional limitations."

Nevertheless, Plaintiff takes issue with the ALJ's primary stated basis for failing to give Dr. Pelnick's RFC opinions controlling weight: the lack of support and

8

inconsistency with other substantial evidence of record. Plaintiff protests that, contrary to the ALJ's analysis, his medical records support "a worsening and unpredictable prognosis." (Doc. 8 at 6). However, the records that Plaintiff cites do not show the "worsening" he claims, nor do they suggest a disabling level of symptoms that is consistent with Dr. Pelnick's opinions during the claimed disability period. For example, Plaintiff cites to an intake record from October 2013 at Talbert House which reports that he was then working for a restaurant delivering pizzas, but had been suffering from nearly "daily" panic attacks for more than 10 years. The longstanding nature of his reported symptoms predated his alleged onset of disability by many years, and obviously did not preclude his ability to work for that length of time. (Tr. 480).

It is true that treatment never fully eliminated all of Plaintiff's symptoms, but that does not mean that Plaintiff's symptoms were disabling. Rather than showing a worsening of his symptoms over time, many of the specific records cited by Plaintiff reflect fewer anxiety symptoms and panic attacks with treatment. (Tr. 672). For example, by June 2015, Plaintiff reported his panic attacks occurred only a few times per week and lasted only about 2 minutes. (Tr. 672). Plaintiff makes much of the fact that he frequently experiences auditory hallucinations in the form of hearing music playing in his head, and at the time Dr. Pelnick completed the RFC form, had reported to Dr. Pelnick that he saw lights that he attributed to the appearance of an angel. (Tr. 628). However, the records on the whole reflect that, despite continued struggles with anxiety and depression throughout 2016 and 2017 and some consistency with hearing music in his head, Plaintiff frequently reported (and Dr. Pelnick and others consistently noted) that his treatment was somewhat effective and helpful. (*See, e.g.*, Tr. 450,

9

record dated 1/12/16 "noting decreased frequency of panic attacks" though Plaintiff was still bothered by his anxiety and hearing music in his head).

Dr. Pelnick appears to have completed his March 2016 assessment during a brief period of increased stress, when Plaintiff had just moved back in with his grandmother, who was in her 90's and who Plaintiff cared for along with his brother, who was reported to have bipolar disorder. (Tr. 698). Despite Plaintiff's report of feeling worse based on his stressful living arrangements, Plaintiff reported a "clear reduction in his auditory hallucinations" at that time. (*Id.*). And in a record dated just two weeks later, Plaintiff was described as "talkative, cooperative, friendly, engaging; clt states that since brother is living elsewhere, things have calmed down at home and he feels less anxiety and panic." (Tr. 693). In August 2016, Dr. Pelnick stated that Plaintiff "continues to seem less depressed objectively." (Tr. 665). In October 2016, Plaintiff reported "some improvement in energy" after Dr. Pelnick increased his medication. (Tr. 649). On March 2, 2017, Plaintiff reported being "more distressed" about his auditory hallucinations of hearing music. (Tr. 782). In response, Dr. Pelnick prescribed new medications and Plaintiff reported back on May 4 2017 that he had seen a "clear improvement over time" with the auditory hallucinations. (Tr. 761). By July 13, 2017, Plaintiff reported that his condition as "significantly better" than its "past baseline" despite the continuation of some symptoms, including the music playing in his head. (Tr. 746).

As additional support for Dr. Pelnick's opinion that he is unable to work in any job, Plaintiff points to his unsuccessful work attempt as a dishwasher in November 2017 – a job he quit after a few hours because he felt overwhelmed by the pace of that work. (Tr. 818). Notably, however, the RFC fashioned by the ALJ specifically precludes <u>any</u>

10

fast paced work. Thus, the fact that Plaintiff could not sustain fast-paced work as a dishwasher has no bearing on whether he could sustain other types of work that more appropriately account for his mental limitations,[4] and that the vocational expert testified that someone with Plaintiff's limitations could perform.

In sum, the record as a whole supports the ALJ's conclusion that Plaintiff continued to suffer from serious mental limitations, but does not support Plaintiff's contention that those mental limitations were disabling. The record also does not support Plaintiff's assertion that his condition worsened over time. Instead, substantial evidence supports the ALJ's analysis of Dr. Pelnick's opinions as not entitled to "controlling weight," because they were contradicted not only by Plaintiff's reports to his therapists but by some of Dr. Pelnick's own records.[5]

### 2. The Ability to Work on a Sustained Basis

As a second assignment of error, Plaintiff argues that the ALJ erred by focusing on Plaintiff's reports of symptom improvement and normal mood and affect. Plaintiff argues that despite some medical records that reflect normal mood or affect, few of Plaintiff's mental health records do so. Plaintiff emphasizes the many records that reflect reports of auditory hallucinations (sometimes described as "earworm" type music), which affect his daily life. (*See e.g.*, Tr. 636). He maintains that his symptoms are so unpredictable, and could flare up at any time, that he cannot engage in work on a "sustained" basis.

---

[4]The ALJ accounted for the limitations in concentration, persistence and pace that Plaintiff's auditory hallucinations and other symptoms might cause by specifically limiting Plaintiff to only 1-4 step tasks with no fast pace or production demands, and only occasional changes in work setting. (Tr. 16).
[5]It is worth noting that the ALJ did not give any greater weight to the RFC assessments of the agency consulting psychologists who reviewed Plaintiff's mental health records, but also gave their opinions only "some weight." The ALJ appropriately discounted the agency psychologist's opinions because they were non-examining sources, despite being "largely consistent" with other substantial evidence of record.

11

In support of his argument, Plaintiff again turns to Dr. Pelnick's RFC opinion that Plaintiff would miss more than four days per month due to his symptoms. However, Dr. Pelnick provided no substantive explanation for this particular opinion. The Sixth Circuit has held that a treating source opinion regarding absenteeism that does not explain why an individual's impairments will result in that degree of absenteeism is patently deficient and entitled to no weight. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 509-510 (6th Cir. 2005). When asked to describe the clinical findings supporting his assessment, Dr. Pelnick merely restated Plaintiff's conditions of chronic depression, severe panic attacks and hearing auditory hallucinations when under extreme stress. For the reasons discussed above, the ALJ's decision not to give Dr. Pelnick's opinions "controlling weight" was substantially supported.

As a second basis for his alleged inability to engage in "sustained" work, Plaintiff refers to his own subjective reports of his symptoms, including his report of the unsuccessful work attempt at the fast-paced dishwasher job. However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of" his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17). The ALJ first focused on many inconsistencies in the record concerning Plaintiff's alleged use of a cane, and other reported physical symptoms that were not supported by the medical record. (*Id.*) For the reasons discussed in the preceding section (including improvement with treatment), the ALJ also found Plaintiff's mental limitations "were not as severe as alleged." (Tr. 18). The ALJ reasonably considered Plaintiff's daily activities, which included reports that he took care of his grandmother and pets, could manage a bank account, and was able to do simple tasks such as preparing meals and laundry.

The ALJ's assessment of the severity of Plaintiff's subjective reports of his symptoms traditionally has been described as the "credibility" determination, but more recently has been redefined as a "consistency determination."[6] It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387. Here, the ALJ's "consistency determination" regarding the limiting impact of Plaintiff's mental health impairments is substantially supported by the record as a whole..

---

[6]The assessment of symptoms, referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). Despite the linguistic awkwardness, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

       /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KERRY T. SPAULDING,                    Case No. 18-cv-886

                                  Black, J.
        Plaintiff,            Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).